IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN ACETO | ) |
| DIANE SNOW | ) |
| JENNIFER SCHEIDEL | ) |
| JAMES A. BURGESS | ) |
| JAMES H. BURGESS | ) |
| BEVERLY FITZHUGH | ) |
| DAFPHANIE BURGESS | ) |
| BRANDI BURGESS | ) |
| GREG CASSIDY CALDWELL | ) |
| SANDRA CALDWELL BLANTON | ) |
| SHELLEY COHEN | ) |
| KENDALL BURNSIDE | ) |
| BARBARA ANN LOUISOS | ) |
| DENNY PRIER | ) |
| VICKI PRIER | ) |
| THOMAS O. PRIER | ) |
| MONIKA A. PRIER | ) |
| TENE WOODS | ) |
| ROGER A. WILSON | ) |
| LINDSAY O"NEIL | ) |
| MARY O'NEIL | ) |

BRIAN WILSON                                              )

ANNIE SANDERS CLAHAR                                      )

BRIAN ACHILLES                                           )

SHANNON KIMBRO                                           )

FRANK SILLS, JR                                          )

JENNY SILLS                                              )

KIMBERLY SEMLINGER                                       )

CYNTHIA H. HURST                                         )

KAYLEE ZIEGLER                                           )

ESTATE OF JAMES HURST,                                   )
    Cynthia Hurst, Administrator                       )
                                                       )
    Plaintiffs,                                        )
                                                       )
    v.                                                 ) Case No. 2019-cv-_____
                                                       )
THE ISLAMIC REPUBLIC OF IRAN                             )
    c/o Ministry of Foreign Affairs,                   )
    Khomeini Avenue                                    )
    United Nations Street                              )
    Tehran, Iran                                       )
                                                       )
                                                       )
    Defendant.                                         )

## **COMPLAINT**

Plaintiffs bring this case against Defendant The Islamic Republic of Iran for damages arising out of the June 25, 1996 terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia. On that day, Hizballah terrorists detonated a 5,000-pound truck bomb outside the complex, which housed United States military personnel. The blast from this bomb sheared off the entire face of one building of the Khobar Towers complex and shattered windows up to a half

mile away.  The blast killed nineteen Air Force servicemen and injured many others, some severely.

Plaintiffs here are injured members of the Air Force who survived the blast, and their immediate family members.  They seek damages under the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1605A(c), and under other applicable state and federal law, and move for judgment against Defendant The Islamic Republic of Iran, and in support of their Complaint allege as follows:

I.

JURISDICTION and VENUE

1.  This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. Sections 1330-1332 and 1605A.

2. This District is the proper venue pursuant to 28 U.S.C. Section 1391(f)(4).

II.

THE PARTIES

Plaintiffs

3.  Plaintiff Steven Aceto is a resident of Texas.   In 1996, he was stationed at Moody Air Force base in Georgia before being assigned for a tour of duty at the U.S. Air Force base in Dhahran, Saudi Arabia.  He was housed at the Khobar Towers complex on June 25, 1996.  When the explosion hit, he was inside his residential quarters, and he was thrown off the couch in the day room where he was sitting.  He felt  as though he had been hit with a baseball bat on the head.  His hands and other parts of his body were bleeding from flying glass.  He has recurring

nightmares and flashbacks to this day.  Plaintiff Jennifer Scheidel  is a resident of Oregon and
was Steven Aceto's wife at the time.  She was also residing at the Khobar Towers complex at the
time.  However, when the blast hit, she was a few miles away working at a munitions facility at
the Air Base.  She heard the sound of the explosion and immediately feared for her own safety,
as it shook the ground she was standing on.  She had an immediate apprehension that she too
would be the victim of a similar explosion that could soon follow.  She looked in the direction of
the blast and saw smoke coming from the Khobar Towers residential complex and feared for the
safety of her husband Steven Aceto.  She spent many hours worrying whether he survived before
she was allowed back to the area and was able to confirm that although he was injured he would
survive.  Plaintiff Diane Snow is Steven Aceto's mother.  She is a resident of Arizona.  She
learned of the terrorist attack through the news media and was terrified that her son may have
been killed.  She spent many painful hours until she learned that he was injured but would be ok.
She suffered deep emotional distress then and afterwards.  All three plaintiffs named in this
paragraph are and were at all relevant times citizens of the United States.

    4.  Plaintiff James A. Burgess is a resident of Florida.  He was doing a tour of duty in
Dharhan as a Staff Sergeant working in munitions, and he was housed at the Khobar Towers
complex on June 25, 1996.  He was lying on his bed when the blast hit, and the shock of the blast
wave threw him to the floor.   He went out to the day room to see what had happened.  The glass
doors there had been blown in entirely and pieces of glass were all over the floor and the couch.
He cut his forearm and sustained other wounds from the broken glass.  He is and was at all
relevant times a United States citizen.  Plaintiff James H. Burgess is James A. Burgess' father.
He is a resident of Maryland.  Plaintiff Beverly Fitzhugh is a resident of Virginia.  She is James'
mother.  When Staff Sergeant Burgess' parents first heard of the attack on news reports, they

suffered great anxiety, because for a long time they didn't know if James was alive or dead. Plaintiff Dafphne Burgess was married to James Burgess at the time of the attack.  She is a resident of Virginia.  She experienced great anxiety and concern when she first heard of the attack on the news.  For many hours, she did not know whether her husband had survived or not. When James returned, she noticed some changes in him.  Eventually they divorced, and Dafphne believes that one principal reason for the divorce were the changes in James caused by the attack. Plaintiff Brandi Burgess is James' daughter.  She is a resident of Virginia.  Although she was very young at the time of the attack, she grew up in a household that was very different than what it would have been like if her father had not been a victim of the attack.  She remembers he was sometimes distant and moody, and troubled by what had happened.  She also believes that the effect the attack had on her father contributed to the eventual divorce of her mother Dafphanie Burgess from her father, and this adversely affected her as well.  All of the plaintiffs named in this paragraph are now and were at all relevant times United States citizens.

5.  Plaintiff Greg Cassidy Caldwell is a resident of Louisiana.  He was doing a tour of duty at Dharhan and was housed at the Khobar Towers complex.  At the time the blast hit, he was sitting in the day room of his quarters facing a sliding glass door.  The door shattered with an immense "boom" and showered him with glass.  He had shards of glass embedded in his body, with the largest ones in his shin, which he later pulled out by himself. In the hours and days that followed he realized that some of his close friends had been killed or severely wounded.  He spent several more weeks at the Khobar Towers complex helping with the search for clues and clean up.  He has suffered from many symptoms of PTSD, including nightmares, fear of crowds, and being startled by loud noises.  Plaintiff Sandra Caldwell Blanton is Greg Cassidy's mother.   She is a resident of Tennessee.  She suffered considerable emotional distress

and anguish when she first heard of the terrorist attack.  It took a long time for her to learn that her son had survived, and those hours seemed endless. When she saw him again several months later, she noticed he was different, more withdrawn, and seemed to have less joy of living.  Both plaintiffs named in this paragraph are and were at all relevant times United States citizens.

6.  Plaintiff Shelley Cohen is a resident of Louisiana.  She was doing a tour of duty at Dharhan Air Force base and was housed at the Khobar Towers complex on the day of the explosion.  She suffered significant injuries and received a Purple Heart.  As a single mother, her first thought when the blast hit was that perhaps she would never see her daughter again, and that her daughter might have to grow up as an orphan.  She has had symptoms of PTSD since that time, such as sleeplessness, nightmares, excessive startle responses to loud noises, and survivor's guilt..  Plaintiff Kendall Burnside, a resident of Oklahoma, is Shelley Cohen's daughter.  She was seven years old at the time of the attack.  She was living with her grandmother, Shelley's mother, at the time.  She remembers that her grandmother received a phone call that day that made her very agitated, but wouldn't tell her what it was about.  She learned in the next few days that her mother's Air Force base had been attacked by terrorists.  Even though she was told that her mother was ok, she continued to worry and was very anxious until she finally got to speak with her mother Shelley on the phone days later.  Plaintiff Barbara Ann Louisos, a resident of West Virginia,  is Shelley Cohen's mother.  She received a phone call from a friend of Shelley's to let her know that there were reports of a terrorist attack on the base.  She remembers feeling like she was in shock.  She wanted to keep the news from her granddaughter to protect her.  However, she knew that her agitation was being picked up by Shelley's 7 year-old daughter.  She could not rest until she finally heard Shelley's voice on the phone.  All plaintiffs named in this paragraph are and were at all relevant times United States citizens.

6

7.  Plaintiff  Denny Prier is resident of Tennessee.  He was serving a tour of duty at Dharhan in 1996 and was also housed at the Khobar Towers Complex at the time of the explosion.  He was sitting in the day room of his quarters when the glass door in front of him shattered and blew in.   He received injuries from the glass, including a larger piece of glass that lodged in his leg.  He has suffered symptoms of PTSD and also survivor's guilt.  Plaintiff Vicki Prier is also a resident of Tennessee and is his wife.   She was distressed to learn of the explosion and remembers being extremely worried until she learned that Denny was alive.  She noticed changes in Denny when he returned and has felt sorrow and concern as a result.  Plaintiff Thomas O. Prier is Denny Prier's father.  Plaintiff Monika A. Prier is his mother.  Both are residents of Florida.  Both parents remember the day of the attack with great clarity.  They learned that their son had survived only after many agonizing hours and suffered substantial emotional distress.   Plaintiff Tene Woods, a resident of Florida, is Denny's sister. She was 16 at the time of the attack.  She remembers both her parents were talking about it and that students and teachers at her high school were all also talking about it.  She had been close with her older brother, who had helped teach her to swim and play basketball.  She loved him very much and felt considerable distress to learn what he had been through.  All plaintiffs named in this paragraph are and were at all relevant times United States citizens.

8.  Plaintiff Roger Wilson is a resident of Illinois.  He was doing a tour of duty at Dharhan Air Base and was also housed at the Khobar Towers complex at the time of the explosion.  He was standing in his room when the blast hit, and remembers that the solid wall in his room just split in two and disappeared.  He was knocked down and received substantial injuries, including injuries to his forehead, which later required numerous stitches to close.  His first thought despite his injuries was to try to help anyone nearby.  He saw his friend George

Anthony nearby bleeding and suffering from electrocution injuries from a live wire, and pulled the wire off him, freed him and helped carry him to safety.  Roger Wilson was awarded a Purple Heart and an Airman's Medal for his heroism in saving George Anthony's life.   He was not formally married at that time, but had been living with his fiancé  Plaintiff Annie Sanders-Clahar.  They planned to be married soon after his return from his tour of duty.  She was very distressed when she heard of the terrorist attack, and immediately knew that her fiancé was there. It took a long time for her to learn that he had not died and would be ok, despite his injuries. However, when Roger returned from his tour of duty, she realized he was not the same person he had been.  He had become moody and withdrawn, and their relationship suffered.  Eventually, they decided to separate.  Both Roger and Annie believe that, had it not been for the attack, they would have carried through with their planned wedding.  Plaintiff Annie Sanders Clahar is a resident of  Georgia. Plaintiff Lindsay O'Neil was Roger Wilson's stepfather, and he was and is married to Roger Wilson's mother, Mary O'Neil.  They are residents of North Carolina.  They remember being acutely troubled when they learned of the terrorist attack through the news, and being very upset until they learned some 36 hours later that Roger had been injured but had survived.  Roger's dad remembers he spent virtually all that time praying and pacing. Plaintiff Brian Wilson is a resident of Oregon.  He is a younger half brother of Roger Wilson, and was very close to him.  He looked up at Roger as a guiding force in his life, and they often spoke about possible career and life choices for Brian.  Brian was very upset when he heard about the terrorist attack on the Khobar Towers, and concerned for his brother's safety.  All plaintiffs named in this paragraph are and were at all relevant times United States citizens.

9. Plaintiffs Shannon Kimbro, a resident of Texas, Kimberly Semlinger, a resident of Texas, and Brian Achilles, a resident of  Virginia, are siblings of Frank David Sills, who was

severely injured in the Khobar Towers blast.  Mr. Sills was a plaintiff in *Akins v. Islamic Republic of Iran*,  332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries. All three siblings remember being agitated and upset when they heard of the terrorist attack, and being concerned for their brother's safety and well being. Plaintiffs Frank Sills Jr. and Jenny Sills are Frank David Sill's father and mother respectively.  They are both residents of Texas.  They both suffered considerable emotional distress when they learned of the attack, and were worried that Frank might not have survived. All plaintiffs named in this paragraph are and were at all relevant times United States citizens.

10.  Plaintiff Kaylee Ziegler, a resident of Arizona,  is the daughter of Eric Ziegler, who was severely injured in the blast.  He was a plaintiff in *Akins v. Islamic Republic of Iran*, supra, and awarded substantial compensatory damages for his injuries.  Kaylee was five years old at the time, and remembers being deeply upset by what she heard, although she didn't understand the full import of it all.  She does remember that she was distressed to learn of her father's injuries when she did later see him and the aftermath of the explosion was something that adversely affected her and their whole family throughout the time she was growing up. Kaylee Ziegler is and was at all relevant times a United States citizen.

11.  Plaintiff Cynthia Hurst, a resident of New Hampshire, is the mother of Kevin Hurst, who was injured in the blast.  He was a plaintiff in *Akins v. Islamic Republic of Iran*, and awarded substantial compensatory damages for his injuries.  Cynthia remembers learning of the attack through news reports and spending many anxious hours with her husband, James Hurst, before they learned that their son Kevin had survived.  She believes that she has secondary PTSD because of how devastated she was by the news of the attack on Kevin and the effect it had on Kevin even after he returned.  She has trouble sleeping and has recurring nightmares.  Plaintiff

Cynthia Hurst is asserting claims in her own right and also as the administrator of the Estate of her husband, James R. Hurst, who died in 2015, and who also suffered shock and emotional trauma as a result of the attack on and injuries to his son Kevin Hurst.  All plaintiffs named in this paragraph are and were at all relevant times United States citizens.

<u>Defendant</u>

12.  Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran"), is a foreign state that has been designated a state sponsor of international terrorism within the meaning of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) and section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780, since January 19, 1984. The Islamic Republic of Iran provides material support and resources to Hezbollah, a politico-paramilitary terrorist organization, by providing it with funding, direction and training for its terrorist activities.

13.  The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under the predecessor statute to 28 USC Section 1605A, 28 U.S.C. § 1605(a)(7), to victims of state sponsored terrorism for the acts and actions of defendant Hezbollah in cases before this Court, including *Anderson v. The Islamic Republic of Iran,* 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. The Islamic Republic of Iran,* 18 F. Supp. 2d 62 (D.D.C. 1998).  Iran has also been found liable for the same terrorist attack of June 25, 1996, at the Khobar Towers at issue here.  *Blais v. Islamic Republic of Iran, et al.*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010); *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018).   Accordingly, defendant Islamic Republic of

Iran is collaterally estopped in this action from denying that it is liable for the acts and actions of Hezbollah in carrying out the terrorist attack at issue here.

14.   Defendant Iran sometimes acted through its political subdivision and instrumentality the Iranian Islamic Revolutionary Guard Corps, also known as Pasdaran or IRGC (hereinafter referred to as "IRGC"), which is a military organization and a branch of the Islamic Republic of Iran. The IRGC has evolved into one of the most powerful organizations in Iran. The IRGC functions as an intelligence organization, both within and outside the country of Iran. The IRGC exerts considerable influence on the government policies of Iran. In addition, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism. The IRGC is the arm through which Iran prepared and oversaw the actions relating to the bomb attack on the Khobar Towers of Dhahran, Saudi Arabia on June 25, 1996. The IRGC, as an agent and political arm of the Islamic Republic of Iran, performed acts within the scope of its agency, each within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hezbollah for its terrorist activities in Saudi Arabia that caused the injuries to plaintiffs herein.  The IRGC has been found to be liable as a foreign state supporting international terrorism under former 28 U.S.C. § 1605(a)(7) to victims of state sponsored terrorism for the acts and actions of defendant Hezbollah in the cases of Higgins v. The Islamic Republic of Iran, Civ. No. 99-377(RCL) (D.D.C. Sept. 21, 2000), and Surette v. Islamic Republic of Iran, Case No. 01-570 (D.D.C.  November 1, 2002).  Moreover, it has been found liable by this Court for the same terrorist attack at issue here.   Blais v. Islamic Republic of Iran,

et al., 459 F. Supp. 2d 40 (D.D.C. 2006); Estate of Heiser v. Islamic Republic of Iran, 466 F.

Supp. 2d 229 (D.D.C. 2006).

15.   Hezbollah was formed by Iran utilizing IRGC assets as an organization to export

Islamic fundamentalism to other Middle Eastern countries and the world through acts of

terrorism, including, but not limited to, the actions relating to the bomb attack in the Khobar

section of Dhahran, Saudi Arabia on June 25, 1996. Hezbollah, acting as an agent of the Islamic

Republic of Iran and of IRGC, performed acts within the scope of its agency, within the meaning

of 28 U.S.C. § 1605A, that caused the injuries to the Plaintiffs herein.

III.

STATEMENT OF FACTS

16.   Several years before the terrorist attack at issue here, the Islamic Republic of Iran

had begun a program of carefully planned acts of terrorism designed to destabilize governments

in the Middle East and export principles of Islamic fundamentalism. Its principal agents and

political subdivisions and arms in this regard were the Iranian Ministry of Information and

Security ("MOIS") and the Pasdaran or Iranian Islamic Revolutionary Guard Corps ("IRGC").

17.   In the early 1980's Iran, through MOIS and the IRGC, established Hezbollah in

Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder.

The MOIS and the IRGC provided funding, training and equipment to Hezbollah enabling it to

pursue and achieve its mission of terrorism.  By the early 1990's, the activities of Hezbollah were

no longer limited to Lebanon.  Its operatives were now operating in a number of countries

utilizing the tactics taught to them in Iran and the Bekaa Valley in Lebanon at facilities

established, operated and supported by the defendant.

18.   In this period, the presence of United States personnel in Saudi Arabia was viewed by the Iranian government as supportive of a Saudi monarchy, which was closely allied with Western governments. In Iran's view, a large-scale terrorist operation designed to kill Americans would expose the corruption of the house of Al-Saud and result in a revolution and the establishment of an Islamic Republic in Saudi Arabia. The Iranian government, acting through MOIS, IRGC, Hezbollah, and Osama bin Laden, began preparations for a bombing of a target associated with American interests.  In 1995, the defendant began months of preparation for such an operation. Hezbollah operatives began to scout potential Arabian targets. Small shipments of explosives were smuggled into Saudi Arabia and stored. An elaborate professional intelligence network was established to carry out the mission.

19.   By June of 1996, the bomb components had arrived in Saudi Arabia, including high explosives, incendiary materials, and sophisticated fuses as well as the tools for the bomb assembly. The Defendant selected and approved a target in Dhahran to be detonated by Hezbollah agents.

20.   In the evening of June 25, 1996, two men drove a stolen Mercedes Benz tanker truck containing the bomb into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. They parked the truck 80-100 feet from a building which housed the American personnel. The men drove away in a waiting Chevrolet Caprice, which had also been stolen as a getaway vehicle. A few minutes later, the bomb exploded.  The explosion killed dozens of persons including nineteen American servicemen.  Hundreds of others were injured and burned.  The blast caused structural damage in buildings a quarter mile away.

21.   Plaintiffs servicemen and women who were present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion.  For most, the

psychological wounds continue to this day.  Plaintiffs who are close family members suffered great emotional distress when they learned of the attack on their loved ones and in the years afterwards, as well as loss of consortium and solatium damages.

## COUNT I

### ACTION FOR DAMAGES UNDER 28 U.S.C. SECTION 1605A

22.  Plaintiffs repeat and incorporate by reference the allegations of all prior paragraphs as though fully set forth herein.

23.  Defendant provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. Section 1605A(a), which caused, enabled and facilitated the terrorist attack at the Khobar Towers.

24.  That terrorist attack, which resulted in nineteen deaths, was an extrajudicial killing within the meaning of Section 1605A, and also caused great personal injury and damage to many others.

25.  Plaintiffs herein were injured in the attack, or are immediate family members of those injured in the attack.  All suffered severe harm, including personal injury, mental anguish, pain and suffering, loss of companionship and society, loss of consortium, and pecuniary loss.

26. The conduct of Iran was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

27.  Iran is therefore liable for the full amount of plaintiffs' damages and for punitive damages under 28 U.S.C. 1605A(c), jointly and severally.

## COUNT II

## ACTION FOR PERSONAL INJURY

### (28 USC SECTION 1605A(c) and ASSAULT AND BATTERY)

28.  Plaintiffs incorporate herein by reference all prior paragraphs as if fully set forth at length.

29.  Defendant Iran intended to and did cause great physical harm, maiming, and death to plaintiffs and severe mental anguish and distress to their immediate family members by detonating a powerful explosive device in their immediate proximity.

30.  As a result of defendants' actions, Plaintiffs who were servicemen and servicewomen – namely Plaintiffs Steven Aceto, Jennifer Scheidel, James A. Burgess, Greg Cassidy Caldwell, Shelley Cohen,  Denny Prier, and Roger Wilson --suffered physical and psychological injuries.

31.  Under 28 U.S.C. Section 1605A(c), Defendant the Islamic Republic of Iran is liable to plaintiffs who suffered personal injuries, physical, emotional, and psychological, for their damages including pain and suffering and economic damages.

32.  Defendant the Islamic Republic of Iran is liable to plaintiffs because it controlled and acted in concert with Hizballah, and provided material support and assistance to Hizballah, in sponsoring its terrorist activities in Saudi Arabia.

33.  WHEREFORE, Plaintiffs Steven Aceto, Jennifer Scheidel, James A. Burgess, Greg Cassidy Caldwell, Shelley Cohen,  Denny Prier, and Roger Wilson demand that judgment be entered against Defendant for damages to compensate them for their injuries, medical expenses, economic losses, and pain and suffering, in an amount to be determined at trial.

## Count III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (28 USC Sections 1605A and 1606)

34.   Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length.

35.   The act of terrorism in detonating a bomb outside of the Khobar Towers complex in Dhahran, Saudi Arabia, with the intent to kill and maim Americans and which in fact did kill and severely injure Americans, including Plaintiffs, constituted extreme and outrageous conduct on the part of defendant Iran and Hizballah members and agents.  The extensive planning and preparation which went into the attack further underscores the malicious and heinous nature of the terrorism involved.

36.   As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizballah members, whose acts were funded and directed by Iran and by the IRGC, all Plaintiffs herein suffered severe emotional distress, including extreme mental anguish and emotional and physical pain and suffering.

37.   Defendant is directly and vicariously responsible for Hizballah's actions because it funded, trained, and directed Hizballah and acted in concert with Hizballah in sponsoring the terrorist attack on Khobar Towers.  It is responsible under state and federal substantive law as made applicable by 28 U.S.C. Section 1606 as well as under 28 U.S.C. Section 1605A.

38.   All Plaintiffs were intended and directly affected victims of defendant's plan to intentionally inflict emotional distress on the victims of their terrorist acts, and are entitled to compensation under applicable law.

39.   For the reasons stated above, Defendant is liable to all Plaintiffs for intentional infliction of emotional distress.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendant in an amount to be determined at trial.

### Count IV

### SOLATIUM, PAIN AND SUFFERING AND LOSS OF CONSORTIUM

### (28 USC SECTION 1605A(c))

40.  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth at length.

41.  As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded, directed and materially supported and assisted by defendant Iran and by the IRGC, Plaintiffs who were immediate family members of the servicemen listed in paragraph 30 above were deprived of the assistance, society and companionship of their family members who were injured in the terrorist attack for extended periods of time.  Those plaintiffs who were immediate family members –plaintiffs Diane Snow, Jennifer Scheidel, James H. Burgess, Beverly Fitzhugh, Dafphanie Burgess, Brandi Burgess, Sandra Caldwell Blanton, Kendall R. Burnside, Barbara Ann Louisos, Vicki Prier, Monika A. Prier, Thomas O. Prier, Tene Woods, Mary O'Neil, Lindsay O'Neil, Brian Wilson, Annie Sanders Clahar, Brian Achilles, Shannon Kimbro, Frank Sills, Jr., Jenny Sills, Kimberly Semlinger, Kaylee Ziegler, Cynthia H. Hurst, and Estate of James Hurst, Cynthia Hurst, Administrator--suffered severe emotional distress and mental anguish as a result of the injuries to their loved ones and as a result of being deprived of their companionship. They are still deprived of the assistance, society, and companionship of the healthy and vibrant young men and women they knew and loved prior to the terrorist attack described above.  This has caused them to suffer, among other things, extreme mental anguish and emotional and physical pain and suffering.

42.  As a result, Diane Snow, Jennifer Scheidel, James H. Burgess, Beverly Fitzhugh, Dafphanie Burgess, Brandi Burgess, Sandra Caldwell Blanton, Kendall R. Burnside, Barbara Ann Louisos, Vicki Prier, Monika A. Prier, Thomas O. Prier, Tene Woods, Mary O'Neil, Lindsay O'Neil, Brian Wilson, Annie Sanders Clahar, Brian Achilles, Shannon Kimbro, Frank Sills, Jr., Jenny Sills, Kimberly Semlinger, Kaylee Ziegler, Cynthia H. Hurst, and Estate of James Hurst, Cynthia Hurst, Administrator, are entitled to damages for solatium and/or loss of consortium under applicable law.

43. For these reasons, Defendant is liable to plaintiffs in an amount to be determined at trial.

### Count V

### **PUNITIVE DAMAGES**

### 28 USC Section 1605A (c)

44.  Plaintiffs incorporate by reference all prior paragraphs above as if fully set forth at length.

45.  The actions of defendant acting in concert with IRGC and Hizballah to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to Plaintiffs and untold pain and suffering to those  Plaintiffs  who were the immediate family members and loved ones of the injured servicemen and servicewomen.

46.  The actions of Hizballah were undertaken at such time as they were operating for and in the service of Defendant Iran and the IRGC, and in concert with them, and which are therefore both vicariously and directly liable to plaintiffs.

47.  For the reasons stated above, Defendant Iran is liable to plaintiffs for punitive damages.  Plaintiffs demand an award of punitive damages against those defendants jointly and severally, in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant judgment in their favor and against Defendant Iran on Counts I through V, and grant Plaintiffs:

A.  Compensatory damages in favor of Plaintiffs as against Defendant in amounts to be determined by the Court;

B.  Punitive Damages in favor of Plaintiffs as against defendant in an amount to be determined by the Court;

C.  Reasonable costs and expenses;

D.  Reasonable attorneys' fees; and

E.  Such other and further relief as the Court may determine to be just and equitable in the circumstances.

Respectfully submitted,


/s/ Paul G. Gaston
Paul G. Gaston (DC Bar # 290833)
LAW OFFICES OF PAUL G. GASTON
1901 Pennsylvania Avenue, NW, Suite 607
Washington DC 20006
202-296-5856
paul@gastonlawoffice.com

*Attorney for Plaintiffs*


DATED:   Feb. 25, 2019