IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN ACETO, et al. )<br> )<br> )<br> )<br>Plaintiffs,  )<br> )<br>v.  ) Case No. 2019-cv-464 (BAH)<br> )<br>THE ISLAMIC REPUBLIC OF IRAN, )<br> )<br> )<br> )<br>Defendant.  ) | |

CERTAIN PLAINTIFFS' MOTION FOR SUPPLEMENTAL DAMAGES

Certain Plaintiffs in this case, as specified below, submit this Motion for Supplemental Damages on the basis that they have suffered additional damages since the Court entered its Judgment and Order in this case on February 7, 2020 (ECF #29).  The United States Victims of State Sponsored Terrorism Fund (USVSST) expressly recognizes the possibility that claimants of the Fund may get awards of supplemental compensatory damages against state sponsors of terrorism and has recognized supplemental compensatory damages as being cognizable for its distribution calculations.  This Motion follows and is patterned on a similar motion for supplemental damages recently filed by undersigned counsel on behalf of certain plaintiffs in *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018) (Howell, C.J.)(Motion filed 12/11/2024, ECF #47).   It is in part derivative of that motion, and in part dependent on the Court's determination of that Motion.

Supplemental damages are especially appropriate in cases where a plaintiff has suffered Post Traumatic Stress Disorder (PTSD) in the aftermath of a terrorist attack.  Often the symptoms of a victim of such an attack worsen over time, and that worsening is reflected in increases in the victim's disability rating from the Veterans Administration. ("VA").   One of the

plaintiffs seeking supplemental damages here, Steven Aceto, perfectly exemplifies that paradigm. Another plaintiff here, Shelley Cohen, has incurred supplemental damages because she had not sought any disability rating at all at the time her claims were brought against defendants. She hesitated to make a disability claim based on her PTSD because she was still actively employed in the military and feared the negative effect on her career and job evaluations that a disability rating based on psychological factors could bring. Another group of plaintiffs herein who are submitting this Motion are the family members of those whose servicemember loved one's awards were lower than they could or should have been, and therefore the Court constrained the damage awards to the family members to lower amounts in order to make sure that family members did not receive more than the servicemember herself.

The following servicemember plaintiffs submit this Motion: Shelley Cohen and two of her family members, daughter Kendall Burnside and the Estate of her mother Barbara Louisos; Steven Aceto and his mother Diane Snow: and two family members of plaintiffs in *Akins v. Islamic Republic of Iran*, supra, who submit this motion conditioned on the granting of supplemental damages to their loved one service members in that case: Cynthia Hurst, and the Estate of James Hurst (parents of Akins servicemember Kevin Hurst).

<u>PROCEDURAL HISTORY</u>

This Court entered judgment awarding plaintiffs herein compensatory damages against Defendant Islamic Republic of Iran on February 7, 2020, ECF #29, attached as Exhibit A hereto.

In a case decided before this case, *Schooley v. Islamic Republic of Iran,* 2019 U.S. Dist. LEXIS 108011, 2019 WL 2717888 (D.D.C. 2019) (Howell, C.J.) this Court established a rubric based on the Veteran Administration's service-related disability rating to determine appropriate compensatory damage awards. The Court established this "objective metric" — the VA

disability rating — to "determin[e] the relative degree of injury suffered by each service-member plaintiff." *Schooley*, 2019 WL 2717888, at *74. That rating is the "agency's official determination regarding the extent of disabling injury sustained by service members in connection with military service." *Id*. (internal quotation marks omitted). As *Schooley* explained, "[t]he VA disability rating, which includes both mental and physical injuries in a single number, facilitates an approach to awarding damages that is generally agnostic to the mental or physical nature of the injury and further provides an effective way of comparing injuries to ensure that similar injuries yield similar awards." *Id*.

The Court continued, "[t]hus, service member plaintiffs rated by the VA up to 30% disabled receive a baseline award of $5,000,000; plaintiffs rated 40-60% disabled by the VA will receive an upward departure, for a total award of $6,000,000; and service-member plaintiffs rated 70-100% disabled by the VA will receive a further upward departure, for a total of $7,000,000. *Schooley*, 2019 WL 2717888, at *75.

<u>ARGUMENT</u>

I. THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES TO MAKE PLAINTIFFS WHOLE.

This Court has the inherent power to award supplemental damages to plaintiffs here. Motions for supplemental damages are most often made in patent cases after a jury has rendered its verdict and before the court has entered judgment.  See *Hynix Semiconductor Inc. v. Rambus, Inc.*, 609 F. Supp. 2d 951, 960-61 (N.D. Cal. 2009); see also *Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1254 (Fed. Cir. 2000). However, there is also precedent for entering an award of supplemental damages even after a judgment has been issued.  *Dow Chem. Co. v. Nova Chems. Corp.*, 803 F.3d 620, 627 (Fed. Cir. 2015); *In Re: Personal Web Technologies ,et al. Patent Litigation*,  Case No. 18-md-02834-BLF (N.D. Cal. Mar. 13, 2019) at *23

3

(*citing Dow Chemical*, "claim preclusion did not apply from a previous judgment to a period of supplemental damages"). Copy attached as Exhibit B. The rationale for this possibility in the patent context is that damages may be continuing even after the jury has entered a verdict, or even after the court has entered a judgment.

These holdings illustrate the principle, widely acknowledged in the patent context, that it would be unfair to the injured party not to allow him to be made whole where there is continuing injury even after entry of judgment. That rationale is analogous to the situation before the court here. Plaintiffs here had suffered a certain degree of injury as of the time the court determined what compensatory damages to award them. However, they continued to suffer even worse injuries from the original attack as time went by, and their PTSD symptoms worsened. Accordingly, the Court should allow them to be compensated for those continuing and worsening effects.[1]

Here, the statute enacted by Congress in 2008 that provided a substantive basis for a federal cause of action against state sponsors of terrorism expressly precluded res judicata from applying to many cases in the transition from one version of the state sponsor of terrorism exception to the FSIA to the other. *See* Section 1083 of the 2008 National Defense Appropriations Act for Fiscal Year 2008 (2008 NDAA). Pub. L. No. 110-181, § 1083, 122 STAT. 3, 338-44. Chief Judge Lamberth, in a comprehensive and well-considered opinion, upheld the constitutionality and applicability of that legislative waiver of res judicata. *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, at 86-88 (D.D.C. 2009). Even if that statute and that decision are limited to the particular circumstances of the legislative

---

[1] The "continuing wrong" exception to res judicata principles is well accepted. E.g., *Legat v. Legat Architects*, No. 20 C 6830 (N.D. Ill. 2021)(copy attached as Exhibit C)

4

transition from a Section 1605(a)(7) FSIA authorization for a waiver of immunity to a substantive federal Section 1605A cause of action, the intent and policy purposes supporting the legislative exception to res judicata principles there are equally applicable here. The underlying legislative policy of the 2008 change was to give victims of terrorism who had brought claims prior to 2008 another chance to litigate their claims under the more favorable statutory regime enacted in 2008.  The same underlying policy should favor allowing victims of terrorism to receive full compensation for the injuries they suffered.

II. EQUITABLE CONSIDERATIONS SUPPORT ENTRY OF SUPPLEMENTAL DAMAGES.

This Court has held that the question of whether to award pre-judgment interest to plaintiffs in similar claims against state sponsors of terrorism "is a question that rests within the Court's discretion, subject to equitable considerations." *Mustard v. Islamic Republic of Iran*, No. 21-cv-163 (D.D.C. Feb 6, 2023)(BAH), Mem. Op. at 32, quoting *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44 at 58 (D.D.C.. 2012).  The question of whether to award supplemental damages here is materially indistinguishable from the question of whether to award prejudgment interest and is similarly well within the Court's inherent authority to exercise its "discretion subject to equitable considerations."

Our servicemen and women put their own safety and their lives on the line for the safety and security of all of us. They do this willingly and unreservedly.  All they ask in return is that they be treated fairly.  Any hint that one servicemember may hold an invidious advantage over another—because of timing, because of unequal application of the law, or for any reason at all—undermines the principles that motivate servicemembers' devotion to service and country. Without going into specifics, it is clear that some servicemembers—including many who served at the Dhahran Air Force Base and were lodged at the Khobar Towers residential complex when

5

it was attacked--have received awards far in excess of others who may have suffered the same or even greater injuries and disabilities. This is inequitable and undermines the principles motivating service in the military. This motion gives the Court a chance to level the playing field and restore fairness in accordance with equitable considerations.

    III.    THE USVSST RECOGNIZES THE POSSIBILITY THAT SUPPLEMENTAL DAMAGES CAN ALTER THE AMOUNT A CLAIMANT RECEIVES IN ANY DISTRIBUTION.

Litigation brought by victims of state sponsored terrorism is subject to legislation enacted by Congress in 2015, the Justice for Victims of State Sponsored Terrorism Act, Pub. Law 114-113 (Dec. 18, 2015), 129 STAT. 2242. This Act has been amended several times since then and is currently codified at 34 U.S.C. 20144 (2023).

Plaintiffs herein continue to search for ways to satisfy their judgment against Iran but rely principally and primarily on the distributions authorized by the USVSST to satisfy their judgments. The distributions they have qualified for have been the second, third and fourth round USVSST distributions. They remain eligible for future distributions throughout the projected life of the Fund, which under current law will sunset in 2039. The USVSST determines what each claimant receives in each distribution by reference to that claimant's compensatory damages. For example, if a claimant had a court judgment for $2.5 million dollars in compensatory damages against a state sponsor of terrorism, she received .4 percent of that amount in the fourth USVSST distribution made in early 2023. If she had $6 million in damages, she received .4 percent of $6 million.

In an announcement published on the USVSST website on April 30, 2024, The Special Master of the USVSST stated that <u>new</u> claims for USVSST distributions had to be submitted by July 1, 2024, to be considered for the planned Fifth Round distribution to be authorized by

6

January 1, 2025. However, in a separate announcement on August 8, 2025, the Special Master announced that there would be a *separate deadline* <u>for existing applicants</u> to be considered for *supplemental damages*. Exhibit D hereto. Such applicants had to submit a Final Order awarding such supplemental damages from a court by a different later date-- Sept. 20, 2024. Accordingly, the Special Master is familiar with, and recognizes, Final Orders from a court awarding supplemental damages to claimants already before the USVSST.

<u>INDIVIDUAL PLAINTIFFS WHO MERIT SUPPLEMENTAL DAMAGES</u>

<u>Shelley Cohen and Two Family Members</u>

Plaintiff Shelley Cohen was cut and bleeding after the glass door of her living quarters blew in on her when the blast hit. Cohen Declaration at 3, ECF #24-1. She did not immediately seek medical care because there were too many others who needed it more and she pulled some pieces of glass from her leg by herself. Id. at 3-4. Her physical wounds healed, but the psychological wounds did not. She did not want to be stigmatized and hurt in her career in the Air Force by seeking professional help available through the military, but did receive some therapy from a psychologist privately. Id. at 4. For the same reasons, she did not apply for a VA disability rating while pursuing her career in the Air Force. She achieved the rank of a Chief Master Sergeant. Id. at 5. The Court awarded her $3 million in compensatory damages.

Upon retiring, however, she applied for and received a disability rating of 100 percent service related disability. Exhibit E hereto. Much of that was based on her PTSD. Exhibit F.

Accordingly she should be awarded an additional $4 million in compensatory damages based on her total service-related disability rating. Even if the Court looked only at her 30 percent disability rating for PTSD, she should be awarded supplemental damages of $2 million.

7

Her mother plaintiff Barbara Louisos (now succeeded by the Estate of Barbara Louisos before the USVSST) was awarded $1,875,000 in compensatory damages, a downward departure from the full measure of $2.5 million awarded other parents. Her daughter Kendall Burnside was awarded $750,000 in compensatory damages, a downward departure from the full measure of $1.5 million awarded other children. Accordingly, the Estate of Barbara Louisos should be awarded supplemental damages of $625,000, and Ms. Burnside should be awarded supplemental damages of $750,000.

### Steven Aceto and One Family Member

Plaintiff Steven Aceto was physically injured in the attack and to this day bears the scars of those injuries. He was rated as 50 percent disabled by the VA at the time evidence was submitted to the Court, and he provided evidence that at least some of that rating was based on his symptoms of PTSD. ECF # 24-1 at 3. However, the Court awarded him only $3 million in compensatory damages. More recently he has been re-evaluated and awarded a 100 percent disability rating--all for post-traumatic stress disorder. Exhibit G hereto. Accordingly, he should be awarded an additional $4 million in supplemental damages.

His mother, plaintiff Diane Snow, was awarded a constrained $1,875,000 in compensatory damages. She should be awarded an additional $625,000 in supplemental damages.

### Two Relatives of Kevin Hurst

Kevin Hurst, a plaintiff in *Akins v. Islamic Republic of Iran*, supra, has submitted a motion for supplemental damages in that case. If his motion is granted, two of his relatives in this case, his mother plaintiff Cynthia Hurst and the Estate of his father, plaintiff Estate of James Hurst, should receive the full measure of damages allowed for parents. They each received

8

$1,250,000 and should receive supplemental damages of $1,250,000 each to bring them up to the full measure of $2.5 million each awarded to parents.

## CONCLUSION

For all the reasons stated, the Court should grant the motion of the enumerated plaintiffs herein for entry of an order awarding them supplemental compensatory damages in the amounts specified.

Respectfully submitted,

/s/ Paul G. Gaston
Paul G. Gaston (DC Bar # 290833)
LAW OFFICES OF PAUL G. GASTON
1101 Connecticut Avenue, NW, Suite 450
Washington DC 20036
202-296-5856
*paul@gastonlawoffice.com*

*Attorney for Plaintiffs*